Good morning. May it please the court. The two laws at issue today are traditional state regulations of land ownership and health and safety. Act 636 prevents prohibited foreign party controlled businesses from acquiring ownership in certain lands, something states have done since the founding. And the bulk of Act 174 creates a licensing scheme to protect Arkansans from the risks of digital asset mining, such as noise emissions, water usage, and cybersecurity threats. The district court erroneously held that Acts 636 and 174 are both conflict and field preempted. Starting with the presumption against preemption. That presumption is at its strongest when the state is regulating in an area of traditional state regulation. We know from cases like Terrace and Hauenstein that states have traditionally regulated land ownership, including alien land ownership, and that that authority has rested with the state since the founding and is rooted in the common law. Thus, the traditional state authority can only be conflict preempted by positive law, such as treaties or statutes. In one case, the Zernig case, the Supreme Court held that a state regulation was field preempted without positive law under the United States foreign affairs powers. Turning first to conflict preemption. The district court... Well, before you get to preemption, could you speak for a moment about the issue of ripeness and explain where this matter is as far as the state court activities and proceedings? Yes, Your Honor. So after the Attorney General received notice under the statutes, he issued a subpoena requesting certain information from Jones-Eagle. And at that point, Jones-Eagle sought relief in federal court and received an injunction, and that is where the state proceeding has stopped. And why doesn't that give standing or ripeness? I think it was the state that argued there was no, either one of the two, standing or ripeness. Yes, Your Honor. So for a couple of reasons. First, I'd point the court to the Google v. Zernig case out of the Fifth Circuit, which I think is pretty squarely on point here. And there it discussed the difference between self-executing and non-self-executing subpoenas. Here it was not self-executing, and it was also issued under a different statute, not the acts of being challenged here. So there's no way to know whether or not the state court will require Jones-Eagle to comply with the subpoena or whether or not they'll be able to move on. In any event, Jones-Eagle doesn't even believe that the Arkansas laws, that they're challenging, apply to it either. So here's the issue I'm having. So I wonder if you're in the wrong set of cases. There's the Susan B. Anthony List case. For us, there's Telescope. And it's just the 281 Care Committee where it talks about if it's part of a constitutional interest and you can bring a pre-enforcement challenge, if there's any indication the state is going to enforce it against you. So here, they're not challenging the subpoena, is my understanding. They're challenging the application of the law. And so why doesn't the issuance of a subpoena at least show that there's a threat? That's all we require, is a threat of enforcement. Yes, Your Honor. And so at least some of those cases arise in the First Amendment context as well as the case Platkin that's in front of the Supreme Court now, they recently heard an argument on. And those involve First Amendment interests, which the courts have generally held require a lower threshold for this inquiry. Here, there's no First Amendment challenge before the court. So the court, we think, can rule on that. Of course, if the court wishes to wait until the Supreme Court's decision in Platkin, it certainly can do that. Do you think there's a difference, just one last follow-up, do you think there's a difference between challenging the subpoena and challenging the enforcement of the law? Because it does seem to apply on its plain language. And the subpoena does indicate a very keen interest by the state in Jones-Eagle. It's possible, yes, Your Honor, there is a difference. And I will say here, though, the Attorney General, we just don't know whether or not this act has been violated because of where the procedure was enjoined in the process. I don't think it was really touched upon in the briefing. If it was, it was very minimal. But I guess there are some procedural mechanisms that the recipient of such a subpoena could take to quash the subpoena or get relief from the subpoena. Is that true? Yes, Your Honor. They can certainly have sought relief in state court. And they could have challenged the issue instead of the subpoena. But again, those proceedings were put on hold. Do you think because of that, do you think abstention is a possibility here? Your Honor, we argued younger abstention below. And I do believe, we didn't raise it, of course, in the briefing here. If the court thinks that that's an appropriate route, I do believe that's a jurisdictional issue. And so it could reach that if it is. Well, that leads to my last question. You noted it really wasn't argued in the briefing. Why not? Your Honor, we just thought some of our other arguments and the limitations on appeal that we would focus on those. And that's why. Doesn't younger abstention, maybe you're thinking of a different kind of abstention, but doesn't younger abstention require a pending state court proceeding? And have they challenged the subpoena yet? Your Honor, so we, the Attorney General's Office, moved in state court to enforce the subpoena against Jones-Eagle. And it was after that that these cases arose in federal court. The proceeding is the Attorney General attempting to enforce the proceeding below, or in state court. Yeah, I don't know if that helps you or hurts you there. Because you've got a parallel proceeding, but their challenge is in federal court to the constitutionality or the preemption of the statute. And then you have the subpoena sitting out there. But the subpoena, all that does is shows a threat of enforcement. So that's a really tough thing to untangle. But you're right. I guess that qualifies as a parallel state proceeding potentially. Yes, Your Honor. So you have enforcement proceeding pending. And what exactly is the form of that enforcement proceeding? Is it a request for relief on behalf of the state? It's a request that the court require that Jones-Eagle comply with the subpoena. So that is pending in circuit court? Yes, sir. And it's on hold until these cases. And do you think if that had been permitted to go forward, if it did go forward, do you think the constitutional issue that is before us, has been briefed before us, could that have been raised? Yes, Your Honor. Jones-Eagle certainly could have raised in state court the federal constitutionalist issues. Instead, they chose to come to federal court at this juncture. And a challenge against a subpoena. They could have raised it. And they could have raised a challenge against a subpoena. Okay. I just want to check. And I'll ask opposing counsel about that. I will now turn back to the conflict preemption piece of this. So the district court found there was conflict preemption based on FIRMA and its non-regulation of land ownership and the Arkansas law's use of the ITAR list of countries subject to arms export regulations. Essentially, the district court's analysis boils down to this. Because the federal government did not regulate land ownership, neither can the states. But to find conflict preemption based on silence, two requirements must be met. First, Congress must have regulated the basic subject or activity subject to the state laws. And second, non-regulation must have been a significant congressional objective. FIRMA and ITAR fell both of those requirements. First, FIRMA is clearly related to national security issues around specific locations. No more than that. In 2018, when Congress gave the President his authority to review certain land transactions, it put its intent in the law. The district court did find that there was a possibility that that could conflict, right? That the federal government could approve the placement of some foreign facility and Arkansas would prohibit it. Is that fair? Your Honor, the district court did engage in a hypothetical about that, and I would have two responses. First, the district court was clearly applying an as-applied challenge, and we would say that that's not the situation here, and it would be an inappropriate hypothetical for the as-applied challenge. And second, I'm sorry. I guess what I'm trying to get at is that, and maybe this is your answer. I'll let you finish, since I'll see if it answers my question. And I was going to say, so first of all, the as-applied issue. And the second response is that FIRMA doesn't allow the executive to authorize the transactions. It only at the back end prohibits them or puts them on hold. And so Arkansas' law is a preceding step that, you know, you never get to the FIRMA analysis in the first place. Well, I thought one of your arguments was that this was what I'll just call loosely a one-off, that it seemed, I think you said, hypothetical, but sort of not the run of the mill, perhaps. How does that factor into our conflict, the preemption analysis, how likely it is to be conflicted? Your Honor, it comes into it when you're trying to determine what Congress' intent was behind the regulation. And so here we see that Congress was very concerned about, and this is what the congressional intent in the statute says, FIRMA review, quote, should not consider issues of national interest absent a national security nexus. So the language of the statute was very clear. FIRMA is a focus on a small subset of issues, as well as the practical outcome of that, which is, I think, what Your Honor was getting at, is in 2023, there are only five reviews. And after the briefing, the 2024 report came out, there are only six reviews of land transactions. That shows, in conjunction with the text, that Congress only cared about this very small subset of national security issues, not land ownership on the whole. On that point, though, if it was near a military base, and I don't know if there are military bases in Arkansas, I assume there is, would the – that's not – I don't understand that being this case, because I think that would have been raised. But would there be a potential conflict if the federal government – and this is maybe the as-applied challenge point you have – if the federal government allowed the land ownership and it ended up being somebody from one of these countries or an entity from one of these countries, but Arkansas' law would still say, no, you can't do that because you're from China or Somalia or one of the prohibited countries? You're certainly right about the as-applied point. That's the first point I'd like to make, that this is an as-applied challenge before the court, and that's not this case. So the court doesn't have to reach that issue. Even if it did have to reach that issue, we would argue there's not an issue there for this reason. There are all sorts of state laws that are – that precede the question. Businesses have to register with secretaries of states. They have to comply with zoning laws or land regulations of all sorts. And to say that this one form of law that was very focused on national security issues preempts all state law that leads up to that transaction I think would be a serious problem to our federal system and states' authority to regulate them. But is it all state laws? We're talking about – getting back to this one, I think, to Strauss' question. What about this particular one? There is no evidence in the record or outside the record that I'm aware of that this would be subject to firmer review at all. And the reason would be because it's not near a military installation and it's – etc. Yes, Your Honor. Or one of the other sort of specific claims. So this one, but it is possible? Is that – you recognize that it could be possible outside the factual scenario we have with this case? Outside this case, that could be possible that there is a land transaction that falls under firmer review. Yes, Your Honor. And what would be your interpretation of the statute that it just potentially does not apply in those circumstances or could be preempted in that as-applied circumstance? I think our first argument would be that it is okay, that there still would be no preemption. Even if there was preemption, though, that would not be this case and the court could decide that then. Okay. ITAR's basic subject as well is not land ownership, is instead arms export regulations. And there's two problems with relying on ITAR. First, the statutory scheme reflects Congress's judgment that the executive should be the one with discretion over specifically arms exports, not any other area of regulation. And second, when the executive places a country on that list, it is only determining that that country should be subject to arms exports. After all, it has no authority to consider what else those countries may be subject to. But wasn't there also, at the time that these were enacted, the idea that we wanted – that at least the executive wanted to encourage international trade and involvement and they were only wanting to narrow it, as you say, to the arms export? I think you're hitting on the Crosby case to some extent. And I would point that in Crosby, there was – it was a sanctioned regime that was achieving a very specific goal abroad. And the Massachusetts law there was trying to achieve that same goal in different ways, which affected the bargaining chip that the president had. Here Jones-Eagle has not pointed to a similar bargaining chip of trying to achieve a specific goal that Congress had intended to give to the president. Instead, it is a general regulation that Congress didn't even know what countries would be on that list on the front end. And instead, it is the back-end determination by the executive that those countries should be subject to arms regulations. Is there any express preemption here? I mean, is there anything in any of the statutes that anyone's identified that says, hey, we're regulating in the land ownership area of foreign entities and, you know, states shouldn't do this, that anything to the contrary is preempted? No, Your Honor, there's no express preemption. And that silence in this case actually shows that Congress did not intend to preempt. So we know from the Wythe case, for example, that there's a two-step question. So first, did Congress have knowledge of what in this case would be the traditional land ownership? And the answer to that is unequivocally, yes, the states have been regulating land ownership since the founding, and it was regulated in the common law as well. The second question is, do the federal laws have a limited and narrow scope? Again, the answer is yes. As we've discussed, FOMA was narrowly concerned with national security issues, and ITAR is narrowly concerned with arms export regulations. Suppose we had a broader statute. Suppose, and leaving express preemptions aside, suppose that it said not all military installations, but it's a national security risk for the Chinese or the Somalians, or I don't remember, there's 24 countries, all these different, to own any land in the country, but subject to approval. Like, we'll approve certain ones. Would that change this case, do you think? Because that would be a much broader law that where Congress, excuse me, the feds are deciding who gets to own ownership, or who gets to own land where. Your Honor, my response there would be the same as the more narrow question about the facts here. Like, what if it did fall under FOMA review? As an initial matter, we think that simply because the government reviews for a very specific purpose, national security, does not preempt all other state laws. States are still allowed to consider, you know, for example, public nuisances, or these type of issues, and regulate related to that, because again, they're not related to national security. I see that I'm in my rebuttal time, unless the Court has questions, I'll reserve the remainder. Thank you. All right, Mr. Jones, you may proceed. May it please the Court. Jones-Eagles principal, Jimmy Chen, is a U.S. citizen who launched a new business in 2023. That's not so unique. Countless other Americans did the same thing. Some succeeded, others didn't. That's not why we're here. We're here because unlike most Americans who started a new business, Jimmy Chen has faced constant government overreach, threatening to shut down his business. He had to file a federal lawsuit and win a preliminary injunction, even to start his business. Mere days after that first injunction, the defendants in this case targeted his company, the Secretary of Agriculture asked his agents, do we have anything at all that can be used to demonstrate the ownership of this facility? Nine days later, the governor issued a press release saying, Jones Digital LLC, near the city of DeWitt, may have significant ties to China. That press release was entitled, Sanders Administration Holds China Accountable. But while Jimmy Chen was born in China, he is an American citizen. Months later, the Attorney General's Act 636 investigation caused Jimmy Chen's land purchase contract at a separate site in Sharp County to collapse. Jimmy Chen was never able to close on the deal. The Attorney General sent a subpoena on the day of closing to the escrow agent, which unraveled the sale. I'm interested in the same question that Judge Shepard asked opposing counsel, is that your hook for standing rightness is the fact that a deal already fell through because of the investigation creating an injury? It is one of an array of hooks. What are they? The first is publicized press releases saying that the government is targeting this company by name. The investigation process itself, the subpoena, this collapsed transaction, which there's testimony in the record, there's evidence, the subpoena itself is part of the trial exhibits. Those were produced on the morning of the preliminary injunction hearing by the Attorney General. The big question here is what is the standard of review for rightness? Rightness is a minimal scrutiny inquiry for a plaintiff. And our client surpasses that minimal threshold. What about abstention, like younger abstention? I didn't see it brief, but we might as well give you a chance to respond. Thank you, Your Honor. Yes. Younger abstention does not apply here. There are multiple reasons why. The first reason is that the state abandoned the argument at the preliminary injunction phase, arguing at that time that there wasn't an enforcement proceeding pending, and therefore, there wasn't rightness. That was the argument presented below to the district court, and that's in the transcript. We made the point at the time that that was a waiver of the younger abstention argument. The second point is that, unfortunately, it's a respectfully incorrect characterization of the current situation in the state court proceeding. The state court proceeding, there is a motion to stay the proceeding that the defendants filed, not Jones-Eagle. We didn't ask for the state court proceeding to end. The second and very crucial reason why younger abstention cannot apply here is because, as appellants counsel acknowledged in the opening argument here, it was issued under a different statute. The subpoena in question there is the general statute allowing for kind of non-subject matter-specific investigations by the Attorney General under Arkansas State statute, not the subpoena power authorized under Act 636, not the subpoena power authorized under Act 174. So it's a different subpoena and a different basis for that subpoena. The final point on younger, Your Honor, we invite the court to resolve that matter because that issue is mooted, in fact. And so in the brief, we recommended that close scrutiny be given to the proceedings in the state court docket. The position that our client takes in the state court is that we have furnished the materials in response to the subpoena the defendants issued in this case for a hearing subpoena with a Dukas-Tecum component. We made a production of hundreds of pages of documents in like the week we had between the setting of the preliminary injunction hearing and the actual trial testimony given there by Mr. Chin. And the defendants were able to and did, in fact, examine the witness on those documents which we produced. Those overlapped with the subpoena preceding this action. And therefore, younger abstention was waived. It couldn't apply because it's a different statutory basis. And that action is moot. So on the point, and I think you're going to probably, based on your second point there, I think you're going to probably disagree with opposing counsel. Your position would be that you can or cannot raise the constitutional issues you're raising here in state court in response to the subpoena. Our position is that we cannot. It is a different statutory basis. So it would be irrelevant in the separate action. I will turn back to what I do want to emphasize today, which is further evidence of the rightness question. In the aftermath of the Sharp County matter, which again accentuates rightness here, Jimmy Chin testified he considered changing his legal name, and I'm quoting, to an American spelling so people wouldn't judge my nationality based on my legal name. Even after that, even after all of that process unfolded, Jones-Eagle tried to work with the Attorney General's investigation. The Attorney General refused to meet with Jones-Eagle. Instead, as we've discussed, the Attorney General issued subpoenas, filed lawsuits, transferred Jones-Eagle's confidential commercial information to third parties. The Attorney General refused to confer with Jones-Eagle about the subpoena it issued, filed a lawsuit seeking contempt. So in order to maintain its business operations, Jones-Eagle filed a second lawsuit, this one, obtaining again a preliminary injunction. In a thorough 43-page order with 53 separate paragraphs of fact-finding taken from the hearing testimony and 45 trial exhibits, the district court correctly found that Acts 636 and 174 intrude in the field of foreign affairs, foreign relations, and national security and conflict with both the President and the Congress's policy decisions and bargaining chips in order to conduct foreign policy, which is entrusted in the federal government, not Arkansas. How does it conflict with these statutes in this case? Like you heard me talk to opposing counsel, and I know Judge Kelly did as well, about a different situation where it's near a military base and the federal government makes a call, et cetera. But these statutes don't seem to apply here because this is near a military base and they don't regulate crypto. Two points, Your Honor. First, FIRMA and specifically CFIUS Review, related and tethered to the military installations, has expanded, and during the pendency of this action, the horizon or the scope of the radius from military installations has expanded. There may be some further discovery in the state court. I would respond by saying this is a preliminary injunction. This isn't a final judgment. But you have to show a likelihood of success on the merits. Yes, Your Honor. The first point I would make is that CFIUS Review is not confined only to land purchases. It's also applicable to business interest transactions. I believe that that was not fully developed in the original argument, but number one, an acquisition or a purchase of a company or a percentage of a company that could trigger CFIUS Review would be conflicted in this case because of the state law, Act 174 and Act 636, and its definition of prohibited foreign party. The second point is we have brought an as-applied and facial challenge in this case. The preliminary injunction rests only on the as-applied challenge. But we would contend that CFIUS Review may affect and likely would affect Jones Eagle, at least if it has any sort of forthcoming or interest in sale, transaction, at this point, prospectively, Your Honor. But this is all speculation at this point because you mentioned that you need to have more discovery to figure out whether this is actually going to happen, whether there's going to be some sort of conflict. The record evidence shows that there have been transactions made with the intent of complying with the state law, but there are conflicts between Act 636 and Act 174. And so I don't believe it's speculative. Let me make a clear point on that. It is not a speculative conflict. The availability of CFIUS Review here reflects a policy judgment from the Congress that certain transactions should be reviewed, others should not be reviewed. And to the extent that that is hinging on a balance of federal policy, that is, we want to have foreign direct investment, we want a statutory textual purpose from FIRMA and FINSA. That's what they articulate going back to the Ford administration in creating CFIUS. It's always been about a balance. Is there any evidence, though, that, I mean, I guess what I'm getting at, is there any evidence that the federal government is interested in any of these transactions at all? That's what I'm getting at. I mean, has there been any kind of review? Is there anything going on that suggests that the federal government is involved or interested? I unfortunately do not have a full picture for you right now, Your Honor. There is, to respond to the question, there is a pending dispute in the federal district court, as the court is well aware. There is continuing jurisdiction on non-injunction matters in the district court. There appears to be an issue of a federal investigation of some sort that is underway, but the defendants have resisted divulging that and have asserted privileges to refuse divulging that, which is the subject of a dispute that is not before this court right now. So the short answer is yes. Asking me, I believe there is some reason there, but I cannot speak with specifics because I do not yet have access to the information. Just one last question, and it's going to switch gears a little bit. What do you do about cases like terrorists? The fact of the matter is that there are some parts of terrorists that probably, well, it's still good law because the Supreme Court can only overrule its own decisions, but there are some things out there that are questionable under existing precedent with terrorists. But terrorists seem to recognize pretty clearly the ability of states to regulate alien ownership or foreign ownership. I guess your client is not an alien, but foreign ownership of land within the state. And I don't know, it seems like, I realize we're in a preemption land, but at least recognize it's an area of traditional state concern. So what do we do with that, which brings up the presumption against preemption and all of that? Yes, Your Honor. As to terrorists, first, we did submit a 28-J that addresses terrorists in the context of the Shin v. Commissioner matter that the 11th Circuit considered. The first answer is we believe that terrorists was egregiously wrong from the jump. We believe it was premised on statutory authority that Congress had enacted, which has since been repealed and therefore is abrogated under that basis. That statutory authority was itself an example, a regrettable example, of invidious racial discrimination, wherein certain persons, based on their race, would be eligible for citizenship, even though others would not be. And so, therefore, the state law at the time in terrorists was premised on an invidiously discriminatory federal classification, but that classification is abrogated and gone. And even in the terrorist world, there were still examples referenced in terrorists, wherein federal authority superseded and, in fact, it would preempt converse state legal authority on the very question of alienage ownership of property. In that case, it was based on treaty, treaty with another foreign government. But in terms of federal state preemption, treaty and statutory preemption are identical in terms of what the supremacy is, and that's the supremacy of federal law over conflicting state law. And so our position is that terrorists is a moth-eaten foundation, I believe, was quoted in the majority opinion in the 11th Circuit. This Court should not build on that moth-eaten foundation. And we also would take the moment to point out that much of the arguments premised today have only related to Act 636 for the reason that, in terms of the question of what level of scrutiny must this Court afford to an equal protection challenge, and we argue, and AMICI, including the Cato Institute, argue that these laws fail strict scrutiny. We argue that the Parada v. Anoka County case, Your Honor, is controlling here and shows why this merits strict scrutiny and why it flunks strict scrutiny under the two-part test. We would add that, excuse me, it's wintertime, the state interest here is at its lowest ebb. If we get to that inquiry, we've argued that the panel should consider any grounds for affirmance here, and the state's interest is also relevant to the presumption against preemption. To get back to your question, Your Honor, while that presumption against preemption may or may not have teeth, it doesn't have teeth in areas where the federal government's interest is supreme. That's the Iowa migrant case that was recently decided. And also, here we have to look at what the state's avowed interest is. The state's avowed interest is extremely negligible. Based on its own state constitution, Arkansas restricts discrimination against resident aliens and citizens. They must be treated the same. Arkansas has already made its own decision on this point that Act 636 and Act 174 do not reflect any sort of interest for either the presumption against preemption analysis or the equal protection analysis if the court chooses to consider that ground for affirmance, which is well supported by the record. Testimony from Secretary Ward, one of the defendants, was that under Act 636, he chose investigative targets because they were U.S. citizens born in China. That's in the appendix which we supplemented, and that is a textbook national origin discrimination. And our argument before this court is that whether it's under preemption or equal protection, the court should affirm. Do you think the Iowa migrant case, though, was a little bit based on field preemption? I mean, it cited both. I'm asking this question because there you can see the field preemption with the immigration. I've got to believe, though, that even you would think, though, that this is not a field preemption situation in terms of property ownership. They don't occupy the field of property ownership, the feds. Absolutely correct. However, where we would push back is that if you look at the record evidence, this is about national security. This is about foreign policy. The Sanders Administration holds China accountable. It isn't Sanders Administration protects farmland. It isn't protects the health concern, which I believe was raised for the first time today in this case. This is about foreign policy from the inception of the statute. You can look at the contemporaneous statements for that as well. The Chinese balloon, if they have a balloon over our country, we shouldn't have them owning property here. On the flip side, do we need evidence that there has been some concern on the part of the federal government in their ability to negotiate or deal with foreign countries? Some of the cases kind of talk about an uproar, an international uproar, and forgive me for not remembering some of the names of the cases. But do we need that in order to, as you're talking about federal interest and state interest, shift to the federal? What is the evidence of the federal interest as a practical matter in this context? The first piece of evidence is that the five or six review data point, which has been discussed in the briefing and today, is a bit under-inclusive, to be clear. There is, as we brief, a specific example of the Biden administration exercising CFIUS review authority to require divestiture of a digital asset mining company in 2024. So this isn't a hypothetical. This is something that CFIUS does. And the five to six review question, there are entire practice groups at law firms in D.C. that handle CFIUS review. The question is how you measure what the review is. If it's an order to divest, that means that the mitigation process didn't work. It means that while the interplay between the federal government, its agencies entrusted with CFIUS specifically, and the entity or the transaction parties who wish to execute a transaction, that mitigation process didn't work to resolve the national security concerns. The federal interest is a balancing interest. One, we want to have foreign direct investment. Two, we need to maintain national security concerns and mitigate the risks from foreign direct investment. But to the extent that we get into a world where 50 different states choose different countries of disfavor, whose citizens therefore no longer can own property. Does it matter that they link it up to the federal list? Or how does that factor in? Your Honor, and I'm about to run out of time. If I may. You can proceed. Thank you, Your Honor. You can answer. Thank you, Your Honor. The federal list is inconsistent with the state list because one of the state laws, in this case, tries to freeze the federal list, which has changed multiple times during the pendency of the litigation, and including one time during this appeal. So the attempt to borrow the federal list actually is the same problem in Crosby. And I would also urge the Court to look at Garamendi here because the federal government is saying, we want to go this far but not that far. They may ratchet it up. They may ratchet it down. But when states start to add problems, then it starts to conflict with federal judgment in foreign policy. Thank you. Thank you, counsel. Mr. Watson, you may respond. A few points. First, I'd like to focus on some of the discussion about the larger CFIUS review. There's a reason the briefing focused on the land review portion of it. It's because there's no evidence of this larger review applying here, either, as Judge Strauss focused on. As well as the Eleventh Circuit's recent decision in Shin indicates that it is no preemption when states are simply regulating something that happens beforehand. There was a registration requirement of land. That was registration. So Shin didn't deal with the actual purchase of property, right? I think they said there wasn't standing. So that's carved out of Shin. Am I right? You're correct, Your Honor. There was, however, in Shin that if a party failed to register, they would be subject to criminal sanctions. And so we think that there is a parity there between the incentive to not buy if you're going to be held criminally liable, as there is here about not being able to buy the land in the first place. Second, I would like to turn to the discussion of the state's tradition, specifically Arkansas. My friend mentioned an Arkansas case, and that Arkansas had already decided that that was not an appropriate regulation. A couple of points. First, the Court doesn't look to the specific state's tradition. It instead looks at the nation's tradition. Otherwise, preemption would change from one state to another, and that wouldn't make much sense. Second, looking at the specific case, that was the Applegate case that was discussed. There, it was inapplicable here for a couple of reasons. First, it was decided under the Arkansas Constitution first. Second, that Arkansas Constitution dealt with the distinction between resident aliens and citizens. Here, these statutes do have a carve-out for resident aliens, and it would not apply. So if this was really just about someone's national origin, there wouldn't be this resident alien carve-out. That's in Arkansas Code, section 1811.110, subsection E, and several times as well in 1811.704. Third, I'd like to discuss the scope of the injunction, which we briefed in our briefing. The District Court enjoined the defendants from enforcing sections of Act 174 that they don't even enforce. So it was an overbroad injunction. However, as the Supreme Court has recently reiterated, injunctive relief should extend no further than is necessary to provide relief to the plaintiffs. And here, Jones-Eagle only challenged section 3 of 174. And unless the Court has any questions, I'll yield the remainder of my time. Thank you. All right. Thank you very much, counsel. The case is well argued. We appreciate your arguments this morning, and they have been very helpful. The case is submitted. Court will render a decision in due course. And with that, counsel, you may stand aside.